BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
R. MICHAEL UNDERHILL
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
ERIC KAUFMAN-COHEN
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 36028
450 Golden Gate Avenue, Room 7-5395
San Francisco, California 94102-3463
Telephone: (415) 436-6647
Facsimile: (415) 436-6632
E-mail: mike.underhill@usdoj.gov
      eric.kaufman-cohen@usdoj.gov

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:16-cv-334 |
| Plaintiff, | IN ADMIRALTY |
| v. | VERIFIED COMPLAINT OF THE UNITED STATES OF AMERICA |
| TUG MALULANI (Vessel ID No. 570062), and its apparel, tackle, and appurtenances, *in rem*; HAWAIIAN TUG & BARGE; and FOSS MARITIME COMPANY, *in personam,* | |
| Defendants. | |

Plaintiff, the United States of America, alleges upon information and belief as follows:

## GENERAL ALLEGATIONS

1.     This is a case of admiralty and maritime jurisdiction against Defendants the Tug MALULANI, ID No. 570062, and its hull, engines, apparel, tackle and appurtenances, *etc.*, *in rem,* and HAWAIIAN TUG AND BARGE and FOSS MARITIME COMPANY, *in personam*, as hereinafter more fully appears, and within Rule 9(h) of the Federal Rules of Civil Procedure.

2.     The United States is authorized to bring this suit pursuant to 28 U.S.C. § 1345.

3.     Venue is properly in this Court pursuant to 28 U.S.C. §§ 1391.

4.     All time times relevant herein, HAWAIIN TUG & BARGE ("HTB") was, upon information and belief, a Hawaiian corporation doing business within the jurisdiction of this Court, including, but not limited to, through its ownership, operation and control of the Defendant Tug MALULANI and other vessels.

5.     FOSS MARITIME COMPANY ("FOSS") is a corporation formed under the laws of the State of Washington.  In 2013 defendant FOSS acquired, upon information and belief, all assets and liabilities of defendant HTB and has its place of business, and is doing business, within this District and within the jurisdiction of this Court, including, but not limited to, through its ownership,

VERIFIED COMPLAINT OF THE
UNITED STATES OF AMERICA                    2                    Case No.: 1:16-cv-334

operation and control of defendant HTB and its ownership and operation of the Tug MALULANI and other vessels.

6.      On information and belief, FOSS is named as a defendant in its status as successor to HTB with respect to the liabilities alleged herein.

7.      The Tug MALULANI is now or during the pendency of process herein will be within this District.

8.      At all times material herein, the Tug MALULANI was owned by defendant HTB, now a part of defendant FOSS.

9.      At all times material herein, defendant HTB, now a part of defendant FOSS, managed the Tug MALULANI.

10.     At all times material herein, defendant HTB, now a part of defendant FOSS, controlled the Tug MALULANI.

11.     At all times material herein, The United States, by and through the United States Navy, owned certain undersea cables located on the northwest side of Ford Island in Pearl Harbor, Hawaii.

## THE INCIDENT

12.     At all times relevant, the Sea-Based X-Band Radar (SBX-1), a floating early-warning radar station, was a public vessel of the United States and was owned by the United States.

13.     On July 12, 2013, SBX-1 was being towed into Pearl Harbor, Hawaii, by the Tug MALULANI, with the aid of four smaller tugs, TIGER 9, TIGER 2, TIGER1 and the PILLANI.

14.     At all relevant times herein, the Tug MALULANI was the lead and dominant tug tasked with safely towing the SBX-1 to its berth in Pearl Harbor. Tugs MALULANI, PILLANI, TIGER 1, TIGER 2 and TIGER 9 were, at all relevant times herein, owned by defendant HTB and/or FOSS.

15.     Prior to the towage operation a Voyage Plan was prepared by HTB with respect to each step to be taken during the tow operation.

16.     The morning of the tug operation a pre-operation meeting was held at HTB between all interested parties, at which time the Voyage Plan was reviewed.

17.     Onboard the SBX-1 at the time of the towage operation was the vessel's Master and a Harbor Pilot from Joint Base Pearl Harbor Hickam. However, because of the shallow water depth of Pearl Harbor, the SBX-1 had to retract its propulsion gear.   Consequently, the vessel was not under its own propulsion during the towage operation and was wholly relying on the MALULANI and her helper tugs for propulsion and navigation.

18.     The first half of the tug operation was uneventful and went according to the Voyage Plan. Pursuant to the Voyage Plan the towing length from the MALULANI to the SBX-1 was 1400 ft.  Once the SBX-1 was steady in the North

Channel of Pearl Harbor, the Master of the MALULANI slowed his vessel in order to shorten the tow length to 200 ft. However, after initially slowing to shorten the tow length in accordance with the Voyage Plan, the Master of the MALULANI slowed his vessel a second time. This second slowing of the MALULANI caused the towline to slacken and thereby increase its depth in the water. The weight of the slackened tow line in turn caused the MALULANI to come to a complete stop, causing the tug to drift astern and thus further increase the slack in and depth of the towline.  This second slowing of the MALULANI was not part of the Voyage Plan and instead was an unexpected action taken solely by the tug Master aboard the MALULANI.

19.    Upon seeing the astern motion of the MALULANI, the two tugs positioned astern of SBX-1, Tug TIGER 1 and Tug TIGER 2, attempted to pull back on the SBX-1 in an attempt to prevent the towing gear from slackening excessively, which could result in the bottoming of the towing bridle. Thereafter, the MALULANI retracted the tow cable and started making headway once again. The stern tugs stopped their astern propulsion so as not to curtail the SBX-1's headway.  Nevertheless, the actions of the MALULANI caused the tow gear to hit bottom.

20.    At approximately the same time the MALULANI slowed for a second time and came to a halt, all input was lost throughout the Electronic Harbor

Security System (EHSS) in Pearl Harbor. The EHSS is a made up of four security cameras placed in and around Pearl Harbor and is integral to the security of the Harbor. In addition, electrical conductivity issues were reported by contractors at Pearl City Peninsula and Ford Island.

21.     In addition, undersea cables had low continuity and showed evidence of damages. In addition, damage was discovered in shore side components linked to the damaged undersea cables.

22.     The area in which the MALULANI slowed for a second time and came to a halt was over a charted, well known, cable bed.  As a result of the actions of the MALULANI, the tow cable hit bottom and damaged two undersea cables owned by the United States Navy.

23.     Since the date of the incident, the United States has sustained damages of approximately $591,668.00 and expects the final damages may include an additional $768,924.90.

**AS AND FOR A FIRST CAUSE OF ACTION**

**AGAINST ALL DEFENDANTS**

**[NEGLIGENCE]**

24.     The United States incorporates by reference each and every Paragraph of this Complaint as though fully set forth herein.

25.   The damage to the undersea cables and damages set forth herein were caused by the fault and negligence of the Defendants, and each of them, such that the Defendants, jointly and severally, are liable to the United States for its damages, which shall be established according to proof at trial.

26.   The damage to the undersea cables and damages set forth herein were not caused or contributed to by the United States, its officers, agents or employees, but were caused solely by the fault and negligence of Defendants, and each of them, and their respective agents, officers, employees, vessels, and crew.

27.   The United States reserves the right to amend this Complaint and assert additional causes of action and/or add additional parties, as may be applicable.

WHEREFORE, the United States of America prays as follows:

1.   That United States of America be granted judgment against HAWAIIN TUG & BARGE and FOSS MARITIME COMPANY, *in personam*, pursuant to the Complaint of the United States herein;

2.   That, pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims this Honorable Court enter an order authorizing a warrant for the arrest of the Tug MALULANI;

3.   That a warrant be issued for the arrest of the Tug MALULANI, together with its tackle, apparel and appurtenances, *etc*.

VERIFIED COMPLAINT OF THE
UNITED STATES OF AMERICA                    7                    Case No.: 1:16-cv-334

4.    That judgment of condemnation and sale be entered against the Tug MALULANI, together with its tackle, apparel and appurtenances, *etc*.

5.    That an order for interlocutory sale of the Tug MALULANI be issued pursuant to Supplemental Admiralty Rule E(9)(b).

6.    That the Tug MALULANI be sold and that the amount of the United States' claim with interest and costs be paid out of the proceeds thereof.

7.    Such other relief as the Court deems just and proper.

Dated: June 22, 2016                      BENJAMIN C. MIZER
                                          Principal Deputy Assistant Attorney General
                                          R. MICHAEL UNDERHILL
                                          Attorney in Charge, West Coast Office

                                          /s/ Eric Kaufman-Cohen
                                          ERIC KAUFMAN-COHEN
                                          Trial Attorney, West Coast Office
                                          Torts Branch, Civil Division
                                          U.S. Department of Justice

                                          Attorneys for Plaintiff
                                          United States of America

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

Eric Kaufman-Cohen says:

I am one of the attorneys for plaintiff, United States of America, herein, and make this verification by authority for and on its behalf; I have read the foregoing Complaint, know the contents thereof, and from information officially furnished to me believe the same to be true.

I verify under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

DATED: June _22_, 2016          s/ Eric Kaufman-Cohen
                               ERIC KAUFMAN-COHEN